**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

WHAM-O HOLDING, LTD. and
INTERSPORT CORP. d/b/a WHAM-O,

    Plaintiffs,

v.

THE PARTNERSHIPS AND UNINCORPORATED
ASSOCIATIONS IDENTIFIED ON SCHEDULE "A",

    Defendants.

Civil Action No.: 1:22-cv-01114

**COMPLAINT**

Plaintiffs, WHAM-O HOLDING, LTD. and INTERSPORT CORP. d/b/a WHAM-O ("WHAM-O" or "Plaintiffs") hereby file this Complaint against the Partnerships and Unincorporated Associations identified on Schedule A attached hereto (collectively, "Defendants"), and hereby allege as follows:

**JURISDICTION AND VENUE**

1. This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051 et seq. 28 U.S.C. § 1338(a)–(b) and 28 U.S.C. § 1331. This Court has jurisdiction over the claims in this action that arise under the laws of the State of Illinois pursuant to 28 U.S.C. § 1367(a), because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

2. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants since each of the Defendants directly targets consumers in the United States, including Illinois, through at least the fully interactive

commercial internet stores operating under the Defendant store names and/or the online marketplace accounts identified in Schedule A attached hereto (collectively, the "Defendant Internet Stores"). Specifically, Defendants are reaching out to do business with Illinois residents by operating one or more commercial, interactive internet stores through which Illinois residents can purchase products bearing counterfeit versions of WHAM-O's trademarks. Each of the Defendants has targeted sales from Illinois residents by operating online stores that offer shipping to the United States, including Illinois, accept payment in U.S. dollars and, on information and belief, has sold products bearing counterfeit versions of WHAM-O's federally registered trademarks to residents of Illinois. Each of the Defendants is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused WHAM-O substantial injury in the State of Illinois.

3. This Court has personal jurisdiction over each Defendant, in that each Defendant conducts significant business in Illinois and in this judicial district, and the acts and events giving rise to this lawsuit of which each Defendant stands accused were undertaken in Illinois and in this judicial district.

**INTRODUCTION**

4. This action has been filed by WHAM-O to combat online counterfeiters who trade upon WHAM-O's reputation and goodwill by selling and/or offering for sale products in connection with WHAM-O's SLIP 'N SLIDE trademarks, which are covered by U.S. Trademark Registration Nos. 2,966,361; 761,883; 2,924,744; 1,432,069 and 3,438,550 (collectively the SLIP 'N SLIDE Trademarks). Wham-O is the owner of trademarks registrations for the SLIP 'N SLIDE Trademarks. The registrations are valid, subsisting, unrevoked, uncancelled, and incontestable pursuant to 15 U.S.C. § 1065. The registrations for the trademarks constitute prima facie evidence

of validity and of WHAM-O's exclusive right to use the trademarks pursuant to 15 U.S.C. § 1057(b). A genuine and authentic copy of the U.S. federal trademark registration certificates for each of the SLIP 'N SLIDE Trademarks are attached as **Exhibit 1**.

5. In the past, WHAM-O was able to police its marks against identifiable infringers and counterfeiters. The rise of online retailing, coupled with the ability of e-commerce sites to hide their identities, has made it nearly impossible for policing actions to be undertaken. The company has availed itself of takedown procedures to remove infringing products, but these efforts have proved to be an unavailing game of whack-a-mole against the mass counterfeiting that is occurring over the internet. The aggregated effect of the mass counterfeiting that is taking place has overwhelmed WHAM-O and its ability to police its rights against the hundreds of anonymous defendants which are selling illegal counterfeits at prices substantially below an original.

6. To be able to offer the counterfeit products at a price substantially below the cost of original, while still being able to turn a profit after absorbing the cost of manufacturing, advertising, and shipping requires an economy of scale only achievable through a cooperative effort throughout the supply chain. As Homeland Security's recent report confirms, counterfeiters act in concert through coordinated supply chains and distribution networks to unfairly compete with legitimate brand owners while generating huge profits for the illegal counterfeiting network:

> Historically, many counterfeits were distributed through swap meets and individual sellers located on street corners. **Today, counterfeits are being trafficked through vast e-commerce supply chains in concert with marketing, sales, and distribution networks.** The ability of e-commerce platforms to aggregate information and reduce transportation and search costs for consumers provides a big advantage over brick-and-mortar retailers. Because of this, sellers on digital platforms have consumer visibility well beyond the seller's natural geographical sales area.
> . . .
> Selling counterfeit and pirated goods through e-commerce is a highly profitable activity: production costs are low, millions of potential customers are available

> online, transactions are convenient, and listing on well-branded e-commerce platforms provides an air of legitimacy.
>
> . . .
>
> The impact of counterfeit and pirated goods is broader than just unfair competition. Law enforcement officials have uncovered intricate links between the sale of counterfeit goods and transnational organized crime. **A study by the Better Business Bureau notes that the financial operations supporting counterfeit goods typically require central coordination**, making these activities attractive for organized crime, with groups such as the Mafia and the Japanese Yakuza heavily involved. Criminal organizations use coerced and child labor to manufacture and sell counterfeit goods. In some cases, the proceeds from counterfeit sales may be supporting terrorism and dictatorships throughout the world.

*See* Department of Homeland Security, *Combating Trafficking in Counterfeit and Pirated Goods*, Jan. 24, 2020, (https://www.dhs.gov/publication/combating-trafficking-counterfeit-and-pirated-goods), at 10, 19 (emphasis added) attached hereto as **Exhibit 2**.

7. The Defendant Internet Stores share unique identifiers, such as design elements and similarities of the unauthorized products offered for sale, establishing a logical relationship between them, and suggesting that Defendants' illegal operations arise out of the same transaction, occurrence, or series of transactions or occurrences. Defendants use aliases to avoid liability by going to great lengths to conceal both their identities as well as the full scope and interworking of their illegal network. Despite deterrents such as takedowns and other measures, the use of aliases enables counterfeiters to stymie authorities:

> The scale of counterfeit activity online is evidenced as well by the significant efforts e-commerce platforms themselves have had to undertake. A major e-commerce platform reports that its proactive efforts prevented over 1 million suspected bad actors from publishing a single product for sale through its platform and blocked over 3 billion suspected counterfeit listings from being published to their marketplace. Despite efforts such as these, private sector actions have not been sufficient to prevent the importation and sale of a wide variety and large volume of counterfeit and pirated goods to the American public.
>
> . . .
>
> A counterfeiter seeking to distribute fake products will typically set up one or more accounts on online third-party marketplaces. The ability to rapidly proliferate third-party online marketplaces greatly complicates enforcement efforts, especially for intellectual property rights holders. Rapid proliferation also allows counterfeiters to hop from one profile to the next even if the original site is taken down or blocked.

> On these sites, online counterfeiters can misrepresent products by posting pictures of authentic goods while simultaneously selling and shipping counterfeit versions.
>
> . . .
>
> Not only can counterfeiters set up their virtual storefronts quickly and easily, but they can also set up new virtual storefronts when their existing storefronts are shut down by either law enforcement or through voluntary initiatives set up by other stakeholders such as market platforms, advertisers, or payment processors.

*Id.* at 5, 11, 12.

8. eCommerce giant Alibaba has also made public its efforts to control counterfeiting on its platform. It formed a special task force that worked in conjunction with Chinese authorities for a boots-on the ground effort in China to stamp out counterfeiters. In describing the counterfeiting networks, it uncovered, Alibaba expressed its frustration in dealing with "vendors, affiliated dealers and factories" that rely upon fictitious identities that enable counterfeiting rings to play whack-a-mole with authorities:



*See* Xinhua, *Fighting China's Counterfeits in the Online Era,* China Daily (Sept. 19, 2017), available at www.chinadaily.com.cn/business/2017-09/19/content_32200290.htm  (**Exhibit 3)**.

5

9. WHAM-O has been and continues to be irreparably damaged through consumer confusion, dilution, loss of control over its reputation and good-will as well as the quality of goods bearing the SLIP 'N SLIDE Trademarks. The rise of eCommerce as a method of supplying goods to the public exposes brand holders and creators that make significant investments in their products to significant harm from counterfeiters:

> Counterfeiting is no longer confined to street-corners and flea markets. The problem has intensified to staggering levels, as shown by a recent Organisation for Economic Cooperation and Development (OECD) report, which details a 154 percent increase in counterfeits traded internationally — from $200 billion in 2005 to $509 billion in 2016. Similar information collected by the U.S. Department of Homeland Security (DHS) between 2000 and 2018 shows that seizures of infringing goods at U.S. borders have increased 10-fold, from 3,244 seizures per year to 33,810.
>
> …
>
> The rise in consumer use of third-party marketplaces significantly increases the risks and uncertainty for U.S. producers when creating new products. It is no longer enough for a small business to develop a product with significant local consumer demand and then use that revenue to grow the business regionally, nationally, and internationally with the brand protection efforts expanding in step. Instead, with the international scope of e-commerce platforms, once a small business exposes itself to the benefits of placing products online — which creates a geographic scope far greater than its more limited brand protection efforts can handle — it begins to face increased foreign infringement threat.
>
> . . .
>
> Moreover, as costs to enter the online market have come down, such market entry is happening earlier and earlier in the product cycle, further enhancing risk. If a new product is a success, counterfeiters will attempt, often immediately, to outcompete the original seller with lower-cost counterfeit and pirated versions while avoiding the initial investment into research and design.
>
> . . .
>
> Counterfeiters have taken full advantage of the aura of authenticity and trust that online platforms provide. While e-commerce has supported the launch of thousands of legitimate businesses, their models have also enabled counterfeiters to easily establish attractive "store-fronts" to compete with legitimate businesses.
>
> See *Combating Trafficking in Counterfeit and Pirated Goods*, Jan. 24, 2020, (**Exhibit 2**) at 4, 8, 11.

10. Not only are the creators and brand holders harmed, the public is harmed as well:

> The rapid growth of e-commerce has revolutionized the way goods are bought and sold, allowing for counterfeit and pirated goods to flood our borders and penetrate our communities and homes. Illicit goods trafficked to American consumers by e-commerce platforms and online third-party marketplaces threaten public health and safety, as well as national security. This illicit activity impacts American innovation and erodes the competitiveness of U.S. manufacturers and workers.
> The President's historic memorandum provides a much warranted and long overdue call to action in the U.S. Government's fight against a massive form of illicit trade that is inflicting significant harm on American consumers and businesses. <u>This illicit trade must be stopped in its tracks</u>.

*Id.* at 3, 4. (Underlining in original).

11. WHAM-O's investigation shows that the telltale signs of an illegal counterfeiting ring is present in the instant action. For example, Schedule A shows the use of store names by the Defendant Internet Stores that employ no normal business nomenclature and, instead, have the appearance of being made up, or if a company that appears to be legitimate is used, online research shows that there is no known address for the company. Thus, the Defendant Internet Stores are using fake online storefronts designed to appear to be selling genuine WHAM-O products, while selling inferior imitations of WHAM-O's products. The Defendant Internet Stores also share unique identifiers, such as design elements and similarities of the counterfeit products offered for sale, establishing a logical relationship between them and suggesting that Defendants' illegal operations arise out of the same transaction, occurrence, or series of transactions or occurrences. Defendants attempt to avoid liability by going to great lengths to conceal both their identities and the full scope and interworking of their illegal counterfeiting operation. WHAM-O is forced to file this action to combat Defendants' counterfeiting of WHAM-O's registered trademarks, as well as to protect unknowing consumers from purchasing unauthorized SLIP 'N SLIDE products over the internet.

12. This Court has personal jurisdiction over each Defendant, in that each Defendant conducts significant business in Illinois and in this judicial district, and the acts and events giving

7

rise to this lawsuit of which each Defendant stands accused were undertaken in Illinois and in this judicial district. In addition, each defendant has offered to sell and ship infringing products into this judicial district.

## THE PLAINTIFFS

13. Wham-O Holding, Ltd., is a foreign company having its principal place of business in Hong Kong at 212-220 Lockhart Road, B2,11/F., Loyong Court Commercial Bldg., Wan Chai, Hong Kong and Plaintiff, InterSport Corp. d/b/a WHAM-O InterSport Corp. d/b/a WHAM-O acts as the Sales, Marketing, Design and Distribution arm of Wham-O products for the Americas and has a place of business at 966 Sandhill Avenue, Carson, California 90746.

14. WHAM-O has been engaged in the business of manufacturing, distributing, and retailing the SLIP 'N SLIDE Brand for over sixty years. WHAM-O or its predecessors have exclusively used these SLIP 'N SLIDE marks. Water slides and other products sold under the SLIP 'N SLIDE marks are among the most popular ever sold, with sales in hundreds of millions of units.

15. WHAM-O's brand, symbolized by the SLIP 'N SLIDE Trademarks, is a recognized symbol of high-quality merchandise. The SLIP 'N SLIDE Trademarks are distinctive and identify the merchandise as goods from WHAM-O. The registrations for the SLIP 'N SLIDE Trademarks constitute prima facie evidence of their validity and of WHAM-O's exclusive right to use the SLIP 'N SLIDE Trademarks pursuant to 15 U.S.C. § 1057 (b).

16. The SLIP 'N SLIDE Trademarks have been continuously used and never abandoned.

17. WHAM-O has expended substantial time, money, and other resources in developing, advertising, and otherwise promoting the SLIP 'N SLIDE Trademarks. As a result,

products bearing the SLIP 'N SLIDE Trademarks are widely recognized and exclusively associated by consumers, the public, and the trade as being products sourced from WHAM-O.

## THE DEFENDANTS

18. Defendants are individuals and business entities who, upon information and belief, reside in the People's Republic of China or other foreign jurisdictions. Defendants conduct business throughout the United States, including within Illinois and in this judicial district, through the operation of the fully interactive commercial websites and online marketplaces operating under the Defendant Internet Stores. Each Defendant targets the United States, including Illinois, and has offered to sell and, on information and belief, has sold and continues to sell counterfeit SLIP 'N SLIDE products to consumers within the United States, including Illinois and in this judicial district.

## THE DEFENDANTS' UNLAWFUL CONDUCT

19. The success of the SLIP 'N SLIDE brand has resulted in its significant counterfeiting. Defendants conduct their illegal operations through fully interactive commercial websites hosted on various e-commerce sites. Each Defendant targets consumers in the United States, including the State of Illinois, and has offered to sell and, on information and belief, has sold and continues to sell counterfeit products that violate WHAM-O's intellectual property rights ("counterfeit products") to consumers within the United States, including the State of Illinois.

20. The Defendant Internet Stores intentionally conceal their identities and the full scope of their counterfeiting operations in an effort to deter WHAM-O from learning Defendants' true identities and the exact interworking of Defendants' illegal counterfeiting operations. Through their operation of the Infringing Internet Stores, Defendants are directly and personally contributing to, inducing and engaging in the sale of counterfeit products as alleged, often times

as partners, co-conspirators and/or suppliers. Upon information and belief, Defendants are an interrelated group of counterfeiters working in active concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell counterfeit products.

21. Upon information and belief, at all times relevant hereto, the Defendants in this action have had full knowledge of WHAM-O's ownership of the SLIP 'N SLIDE Trademarks, including the exclusive right to use and license such intellectual property and the goodwill associated therewith.

22. Defendants often go to great lengths to conceal their identities by often using multiple fictitious names and addresses to register and operate their massive network of Defendant Internet Stores. Other Defendant Internet Stores often use privacy services that conceal the owners' identity and contact information. Upon information and belief, Defendants regularly create new websites and online marketplace accounts on various platforms using the identities listed in Schedule A to the Complaint, as well as other unknown fictitious names and addresses. Such Defendant Internet Store registration patterns are one of many common tactics used by the Defendants to conceal their identities, the full scope and interworking of their massive counterfeiting operation, and to avoid being shut down.

23. The counterfeit SLIP 'N SLIDE products for sale in the Defendant Internet Stores bear similarities and indicia of being related to one another, suggesting that the counterfeit SLIP 'N SLIDE products were manufactured by and come from a common source and that, upon information and belief, Defendants are interrelated. The Defendant Internet Stores also include other notable common features, including use of the same registration patterns, unique shopping cart platforms, accepted payment methods, check-out methods, meta data, illegitimate SEO tactics, HTML user-defined variables, lack of contact information, identically or similarly priced items

and volume sales discounts, similar hosting services, similar name servers, and the use of the same text and images.

24. In addition to operating under multiple fictitious names, Defendants in this case and defendants in other similar cases against online counterfeiters use a variety of other common tactics to evade enforcement efforts. For example, counterfeiters like Defendants will often register new stores or online marketplace accounts under new aliases once they receive notice of a lawsuit. Counterfeiters also often move website hosting to rogue servers located outside the United States once notice of a lawsuit is received. Rogue servers are notorious for ignoring takedown demands sent by brand owners. Counterfeiters also typically ship products in small quantities via international mail to minimize detection by U.S. Customs and Border Protection. A 2019 U.S. Customs and Border Protection report on seizure statistics indicated that E-Commerce sales have contributed to large volumes of low-value packages imported into the United States. Department of Homeland Security, *Intellectual Property Rights*, September 2020. (https://www.cbp.gov/sites/default/files/assets/documents/2020-Sep/FY%202019%20IPR%20Statistics%20Book%20%28Final%29.pdf), at 12 attached hereto as **Exhibit 4**. In FY 2019, there were 144 million express shipments and 463 million international mail shipments. Over 90 percent of all intellectual property seizures occur in the international mail and express environments. Id.

25. Further, counterfeiters such as Defendants, typically operate multiple credit card merchant accounts and third-party accounts, such as, but not limited to, PayPal, Inc. ("PayPal") accounts, behind layers of payment gateways so that they can continue operation in spite of WHAM-O's enforcement efforts. Upon information and belief, Defendants maintain off-shore bank accounts and regularly move funds from their PayPal accounts to off-shore bank accounts

11

outside the jurisdiction of this Court. Indeed, analysis of PayPal transaction logs from previous similar cases indicates that offshore counterfeiters regularly move funds from U.S.-based PayPal accounts to China-based bank accounts outside the jurisdiction of this Court.

26. Upon information and belief, Defendants also deceive unknowing consumers by using the SLIP 'N SLIDE Trademarks without authorization within the content, text, and/or meta tags of their websites to attract various search engines crawling the Internet looking for websites relevant to consumer searches for SLIP 'N SLIDE products. Additionally, upon information and belief, Defendants use other unauthorized search engine optimization (SEO) tactics and social media spamming so that the Defendant Internet Stores show up at or near the top of relevant search results and misdirect consumers searching for genuine SLIP 'N SLIDE products. Further, Defendants utilize similar illegitimate SEO tactics to propel new Defendant Internet Stores to the top of search results after others are shut down.

27. Defendants' use of the trademarks on or in connection with the advertising, marketing, distribution, offering for sale and sale of the counterfeit products is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming WHAM-O. Defendants have manufactured, imported, distributed, offered for sale and sold counterfeit products using the SLIP 'N SLIDE Trademarks and continue to do so.

28. Defendants, without authorization or license from WHAM-O, knowingly and willfully used and continue to use the SLIP 'N SLIDE Trademarks in connection with the advertisement, offer for sale and sale of the counterfeit products through, inter alia, the internet. The counterfeit products are not genuine SLIP 'N SLIDE products. WHAM-O did not manufacture, inspect, or package the counterfeit products and did not approve the counterfeit products for sale or distribution. The Defendant Internet Stores offer shipping to the United States,

including Illinois, and, on information and belief, each Defendant has sold counterfeit products into the United States, including Illinois.

29. Defendants also deceive unknowing consumers by using the SLIP 'N SLIDE trademarks without authorization within the content, text, and/or meta tags of the listings on Defendant Internet Stores in order to attract various search engines crawling the internet looking for websites relevant to consumer searches for SLIP 'N SLIDE products and in consumer product searches within the Webstores.

30. Upon information and belief, Defendants will continue to register or acquire listings for the purpose of selling Counterfeit Goods that infringe upon the SLIP 'N SLIDE Trademarks unless preliminarily and permanently enjoined.

31. Defendants' use of the SLIP 'N SLIDE Trademarks in connection with the advertising, distribution, offering for sale, and sale of counterfeit SLIP 'N SLIDE products, including the sale of counterfeit SLIP 'N SLIDE products into Illinois, is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming WHAM-O.

## COUNT I
### TRADEMARK INFRINGEMENT AND COUNTERFEITING (15 U.S.C. § 1114)

32. WHAM-O repeats and incorporates by reference herein its allegations contained in the above paragraphs of this Complaint.

33. This is a trademark infringement action against Defendants based on them unauthorized use in commerce of counterfeit imitations of the registered SLIP 'N SLIDE Trademarks in connection with the sale, offering for sale, distribution, and/or advertising of infringing goods. The SLIP 'N SLIDE Trademarks are highly distinctive marks. Consumers have

come to expect the highest quality from WHAM-O's products provided under the SLIP 'N SLIDE Trademarks.

34. Defendants have sold, offered to sell, marketed, distributed, and advertised, and are still selling, offering to sell, marketing, distributing, and advertising products in connection with the SLIP 'N SLIDE Trademarks without WHAM-O's permission.

35. The United States Registrations for the SLIP 'N SLIDE Trademarks (**Exhibit 1**) are in full force and effect and are exclusively owned Upon information and belief, Defendants have knowledge of WHAM-O's' rights in the SLIP 'N SLIDE Trademarks and are willfully infringing and intentionally using counterfeits of the SLIP 'N SLIDE Trademarks. Defendants' willful, intentional and unauthorized use of the SLIP 'N SLIDE Trademarks is likely to cause and is causing confusion, mistake, and deception as to the origin and quality of the counterfeit goods among the general public.

36. Defendants' activities constitute willful trademark infringement and counterfeiting under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

37. WHAM-O has no adequate remedy at law, and if Defendants' actions are not enjoined, WHAM-O will continue to suffer irreparable harm to its reputation and the goodwill of its well-known SLIP 'N SLIDE Trademarks.

38. The injuries and damages sustained by WHAM-O has been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offering to sell, and sale of counterfeit SLIP 'N SLIDE products.

## COUNT II
## FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))

39. WHAM-O repeats and incorporates by reference herein its allegations contained in the above paragraphs of this Complaint.

40. Defendants' promotion, marketing, offering for sale, and sale of counterfeit SLIP 'N SLIDE products have created and is creating a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection, or association with WHAM-O or the origin, sponsorship, or approval of Defendants' counterfeit SLIP 'N SLIDE products by WHAM-O.

41. By using the SLIP 'N SLIDE Trademarks in connection with the sale of counterfeit SLIP 'N SLIDE products, Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the counterfeit SLIP 'N SLIDE products.

42. Defendants' false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the counterfeit SLIP 'N SLIDE products to the general public is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

43. WHAM-O has no adequate remedy at law and if Defendants' actions are not enjoined, WHAM-O will continue to suffer irreparable harm to its reputation and the goodwill of the well-known SLIP 'N SLIDE Trademarks.

## COUNT III
## VIOLATION OF ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT
## (815 ILCS § 510, et seq.)

44. WHAM-O repeats and incorporates by reference herein its allegations contained in the above paragraphs of this Complaint.

45. Defendants have engaged in acts violating Illinois law including, but not limited to, passing off their counterfeit SLIP 'N SLIDE products as those of WHAM-O, causing a

likelihood of confusion and/or misunderstanding as to the source of their goods, causing a likelihood of confusion and/or misunderstanding as to an affiliation, connection, or association with genuine SLIP 'N SLIDE products, representing that their products have WHAM-O's approval when they do not, and engaging in other conduct which creates a likelihood of confusion or misunderstanding among the public.

46. The foregoing Defendants' acts constitute a willful violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS § 510, et seq.

47. WHAM-O has no adequate remedy at law, and Defendants' conduct has caused WHAM-O to suffer damage to its reputation and goodwill. Unless enjoined by the Court, WHAM-O will suffer future irreparable harm as a direct result of Defendants' unlawful activities.

**PRAYER FOR RELIEF**

WHEREFORE, WHAM-O prays for judgment against Defendants as follows:

1) That Defendants, their affiliates, officers, agents, employees, attorneys, and all persons acting for, with, by, through, under, or in active concert with them be temporarily preliminarily, and permanently enjoined and restrained from:

   a. using the SLIP 'N SLIDE Trademarks or any reproductions, counterfeit copies, or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a genuine SLIP 'N SLIDE product or is not authorized by WHAM-O to be sold in connection with the SLIP 'N SLIDE Trademarks;

   b. passing off, inducing, or enabling others to sell or pass off any product as a genuine SLIP 'N SLIDE product or any other product produced by WHAM-O that is not

16

      WHAM-O's or not produced under the authorization, control, or supervision of WHAM-O and approved by WHAM-O for sale under the SLIP 'N SLIDE Trademarks;

c. committing any acts calculated to cause consumers to believe that Defendants' counterfeit SLIP 'N SLIDE products are those sold under the authorization, control, or supervision of WHAM-O, or are sponsored by, approved by, or otherwise connected with WHAM-O;

d. further infringing the SLIP 'N SLIDE Trademarks and damaging WHAM-O's goodwill;

e. otherwise competing unfairly with WHAM-O in any manner;

f. shipping, delivering, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for WHAM-O, nor authorized by WHAM-O to be sold or offered for sale, and which bear any WHAM-O's trademarks, including the SLIP 'N SLIDE Trademarks, or any reproductions, counterfeit copies, or colorable imitations thereof; and

g. using, linking to, transferring, selling, exercising control over, or otherwise owning the online marketplace accounts, the Defendant Internet Stores, or any other internet store or online marketplace account that is being used to sell or is the means by which Defendants could continue to sell counterfeit SLIP 'N SLIDE products;

2) That Defendants, within fourteen (14) days after service of judgment with notice of entry thereof upon them, be required to file with the Court and serve upon WHAM-O a written report under oath setting forth in detail the manner and form in which Defendants have complied with paragraph 1, a through g, above;

17

3) Entry of an Order that, upon WHAM-O's request, those in privity with Defendants and those with notice of the injunction, including any online marketplaces such as, but not limited to, Amazon, social media platforms, Facebook, YouTube, LinkedIn, Twitter, internet search engines such as Google, Bing and Yahoo, web hosts for the Defendant Internet Stores, and domain name registrars, shall:

 a. disable and cease providing services for any accounts through which Defendants engage in the sale of counterfeit SLIP 'N SLIDE products using the SLIP 'N SLIDE Trademarks, including any accounts associated with the Defendants listed on Schedule A;

 b. disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of counterfeit SLIP 'N SLIDE products using the SLIP 'N SLIDE Trademarks; and

 c. take all steps necessary to prevent links to the Defendant Internet Stores identified on Schedule A from displaying in search results, including, but not limited to, removing links to the Defendant Internet Stores from any search index;

4) That Defendants account for and pay to WHAM-O all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged, and that the amount of damages for infringement of the SLIP 'N SLIDE Trademarks be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117;

5) In the alternative, that WHAM-O be awarded statutory damages pursuant to 15 U.S.C. § 1117(c)(2) of $2,000,000 for each and every use of the SLIP 'N SLIDE Trademarks;

6) That WHAM-O be awarded its reasonable attorneys' fees and costs; and

7) Award any and all other relief that this Court deems just and proper.

DATED: March 3, 2022                                    Respectfully submitted,

*/s/ Keith A. Vogt*
Keith A. Vogt (Bar No. 6207971)
Keith Vogt, Ltd.
33 West Jackson Boulevard, #2W
Chicago, Illinois 60604
Telephone: 312-971-6752
E-mail: keith@vogtip.com

**ATTORNEY FOR PLAINTIFFS**